UNITED STATES of America,
Plaintiff–Appellee,

v.

Muhannad MUSA, Defendant–Appellant.

No. 90–3122.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1991.

Decided Nov. 5, 1991.

As Corrected Nov. 26, 1991.

Rehearing Denied Dec. 2, 1991.

---

Ralph M. Friederich, Asst. U.S. Atty., Ranley R. Killian, Jr. (argued), Office of U.S. Atty., Criminal Div., East St. Louis, Ill., for U.S.

Daniel J. Pope, Bryan W. Sill (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Muhannad Musa.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and MORAN, Chief District Judge.[*]

BAUER, Chief Judge.

On January 25, 1990, Muhannad Musa was charged in a one-count indictment with conspiracy to distribute in excess of 500

---

[*] The Honorable James B. Moran, Chief Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

grams of cocaine, in violation of 21 U.S.C. § 846 (1988). The indictment alleged that from October 1988 through June 1989, in the Southern District of Illinois, Musa knowingly and intentionally conspired with others to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988).

On June 12, 1990, Musa appeared with counsel before District Court Judge James Foreman and entered a plea of guilty. Judge Foreman asked Musa preliminary questions to establish defendant's competency to plead, that he had consulted with counsel before deciding to plead guilty, and that he understood all the consequences of a guilty plea. The judge then asked the government to recite what the evidence would have shown if the case had proceeded to trial. The prosecutor made a lengthy and detailed proffer, the essence of which was that Musa was a supplier of cocaine to one Edward Witkowski, a convicted drug dealer from Mt. Carmel, Illinois, and had engaged in cocaine transactions with Witkowski and others in quantities of between 2 and 3.5 kilograms.

After the prosecutor finished his recitation, and in response to the judge's question, Musa disputed both the amount of cocaine involved and his role in the transactions. He claimed to be Witkowski's customer rather than his supplier, but did admit selling cocaine to an unindicted co-conspirator, Cynthia Yurina. The judge then asked Musa if he understood that at a trial he could present his own evidence to persuade a jury that he was a buyer, not a seller, of cocaine. Musa responded he understood, and persisted in his intention to plead guilty while at the same time persisting in his challenge to the amount of cocaine. Judge Foreman then restated that Musa did not dispute the evidence that he dealt in cocaine with Witkowski, regardless of his role. Musa repeated that he did engage in drug activities with Witkowski, and told the court he pled guilty as charged. Judge Foreman accepted his plea, ordered a presentence report, and set the matter for sentencing on September 10, 1990.

The presentence report prepared by the probation office tracked the government's allegations. Musa filed written objections to the report, contesting the amount of drugs attributable to him.

The central issue at Musa's sentencing hearing was the disputed amount of cocaine involved in the conspiracy. Special Agent Ron Bratcher of the Federal Bureau of Investigation testified to what cooperating co-conspirators told him regarding the amounts of cocaine Musa supplied Witkowski. According to those co-conspirators, Musa supplied Witkowski with thirteen ounces of cocaine between November, 1988 and January, 1989; three ounces in late January or early February, 1989; one kilogram in April, 1989, and a second kilogram in May, 1989.

Musa took the stand and denied involvement in kilogram sales of cocaine. He did admit, however, that he supplied Witkowski with three ounces in January, 1989, that he supplied other unindicted co-conspirators with ⅛ ounce, and that he sold seven ounces he claimed Witkowski supplied to him. In all, Musa admitted to conspiring to distribute 200 to 300 grams of cocaine. On cross-examination, the government showed Musa a page from his personal calendar for 1989 on which he had written his customers initials and the amounts they owed him. In response to the government's questions, Musa admitted that the initials belonged to at least ten customers, but could remember only one of their names.

At the conclusion of the testimony, the judge found Musa's version of the facts untruthful, specifically Musa's inability to recall his customers names. Judge Foreman noted that Musa's co-conspirators, whose pleas he had already accepted, were more candid and more cooperative. All of them, in their own plea hearings, admitted the amount of cocaine involved was between 2 and 3.5 kilograms, and all of them indicated Musa was the supplier. Judge Foreman found the amount involved was between 2 and 3.5 kilograms. He adopted the factual findings in the presentence report as his own, determined Musa's total offense level to be 26 (allowing him a two

level reduction for acceptance of responsibility), and sentenced him to 70 months imprisonment, four years of supervised release following his prison term, and a special assessment of $50.

Defendant Musa now seeks to have his conviction vacated and remanded to the district court. He argues that the district court erroneously accepted his guilty plea and improperly sentenced him in violation of Rules 11 and 32 of the Federal Rules of Criminal Procedure. For the reasons set forth herein, we affirm.

## I.

As a threshold matter, we must determine whether we have jurisdiction over this appeal. Defendant's trial counsel timely filed a notice of appeal with the United States District Court for the Southern District of Illinois. The notice, however, incorrectly designated the United States Court of Appeals for the Eighth Circuit as the court to which the appeal was taken. We raised the sufficiency of defendant's notice under Rule 3(c) of the Federal Rules of Appellate Procedure, and thus our jurisdiction, *sua sponte,*[1] and ordered the issue taken with the case.

■ Rule 3(c) states, in relevant part:
Content of the Notice of Appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

Fed.R.App.P. 3(c). The specificity requirement of Rule 3(c) is jurisdictional. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). *Torres* addressed whether use of *"et al."* in the notice of appeal, rather than individually naming each party filing the notice, is

fatal to the unspecified party's appeal. The Court held that it is. Its purpose is to give notice of the identity of those taking an appeal to opposing parties and the court. *Id.* at 318, 108 S.Ct. at 2409. Notwithstanding the language of the final sentence of the rule that permits an appeal to proceed in spite of informality in a notice of appeal's form or title, the Court stated that "failure to name a party in the notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." *Id.* at 314, 108 S.Ct. at 2407.

■ Central to the *Torres* decision is the principle of fair notice to the opposition and the court. That principle is not violated by the notice filed in this case. It unambiguously informs the prosecuting attorney and the district court that the defendant appeals from the judgment entered on September 10, 1990. That the prosecutor received fair notice is evident in that the United States Attorney for the Southern District of Illinois filed his appearance within ten days after the appeal was docketed. That the district court received fair notice also is evident: the notice of appeal bears a date-stamp showing it was filed with the district court clerk's office. Counsel's error in designating the Eighth Circuit rather than the Seventh does not deprive anyone of fair notice of defendant's appeal. Except in the limited circumstance, not applicable here, under which an appeal may be taken directly from the district court to the Supreme Court, *see* 28 U.S.C. § 1253, this is the only court to which defendant may appeal. We thus have jurisdiction. *Accord McLemore v. Landry,* 898 F.2d 996, 999 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990) (defendant's failure to designate any circuit in the notice of appeal not a bar to jurisdiction because that court was the only court to which an appeal could be taken); *cf. Chaka v. Lane,* 894 F.2d 923 (7th Cir.1990) (notice of appeal named interlocutory or-

---

1. This court ordered defendant to file a memorandum stating why this appeal should not be dismissed for lack of jurisdiction. In his memorandum, defendant's counsel below rather ungraciously laid the blame at the feet of his secretary who, he stated, "failed to change the

form from 'Eighth Circuit' to 'Seventh Circuit' in the typing of the 'Notice of Appeal'...." All attorneys should be aware that they ultimately are responsible for every document to which they affix their signatures, and should, therefore, read each carefully before doing so.

der, but because it was the sole basis of the final judgment, notice not deficient).

## II.

The first issue Musa raises is that the district court committed reversible error in accepting his guilty plea. His argument has two prongs, both grounded in Rule 11 of the Federal Rules of Criminal Procedure: that there was no adequate factual basis for the guilty plea on the record as required by subsection (f), and that the trial court failed to determine that Musa understood the nature of the charge against him as required by subsection (c)(1).

### A.

Musa's challenge to the factual basis for his guilty plea arises out of his testimony during the change of plea hearing that he was a buyer, not a seller, of cocaine and that he was not involved in a conspiracy to distribute more than 500 grams of cocaine. The core of his argument is that once he contested the evidence proffered by the government, the court was obligated to lay a factual foundation on the record before accepting his plea. In not doing so, he argues, the court failed to follow the dictates of Rule 11(f). Defendant, however, misunderstands the requirements of the rule.

Subsection (f) provides:

Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Fed.R.Crim.P. 11(f). Rule 11(f) does not require the district judge to engage in a colloquy with the defendant to establish a factual basis for a guilty plea. A judge may find the factual basis from anything that appears on the record, *United States v. Lumpkins*, 845 F.2d 1444, 1450 (7th Cir. 1988), which includes the government's proffer. Moreover, as the Supreme Court made clear in *North Carolina v. Alford*, a defendant may plead guilty while at the same time protesting his innocence because

an express admission of guilt ... is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970).

Although not required by the rule, the district judge here did engage in a colloquy with the defendant. After Musa indicated to the judge his disagreement with the government's evidence, the judge pointed out that Musa could have a jury decide whose facts to accept, his or the government's. Musa indicated he understood, but persisted in his guilty plea nonetheless. Report of Proceedings for Change of Plea ("Plea Tr.") at 26. Indeed, the judge went further:

THE COURT: Well, we've got a classic case here of people saying different things. You, nevertheless, can take advantage of the situation in the sense of entering a plea if you still want to in spite of the fact that you feel the evidence is not the way you see it. Is that what you want to do?

THE DEFENDANT: Excuse me, sir, for a second. I'm going to plead guilty as charged.

THE COURT: Well, all right. That's what you want to do. And—

THE DEFENDANT: I'm going to contest the amount that they're claiming that I had.

THE COURT: You're what?

THE DEFENDANT: I'm going to contest the amount of drugs that they alleged me of bringing into—

THE COURT: You're going to contest the amount?

THE DEFENDANT: Yes.

THE COURT: But you don't dispute the fact that you and Witkowski did deal in cocaine?

THE DEFENDANT: Yes, sir.

THE COURT: Whether or not you were the buyer or the seller or he was the buyer or the seller, you did?

THE DEFENDANT: I did engage with him.

THE COURT: What?

THE DEFENDANT: I did engage with him in drug activities.

THE COURT: And you don't dispute the fact that he sold to other people?

THE DEFENDANT: I'm not going dispute that because I knew about that fact.

THE COURT: So in effect, you, one way or another helped him to facilitate this conspiracy?

THE DEFENDANT: Yes, sir.

THE COURT: To deal in cocaine?

THE DEFENDANT: Yes.

THE COURT: Then you want to plead guilty; is that right, Mr. Musa?

THE DEFENDANT: I'm going to plead guilty as charged, sir.

Plea Tr. 27–28.

■ Because Musa was only charged with conspiracy to distribute cocaine, the only facts that had to be established on the record were the elements of conspiracy. Here, Judge Foreman had before him both the evidence contained in the government's proffer and Musa's admissions (quoted above) concerning his involvement in a drug distribution conspiracy. The test for whether there is a sufficient factual basis for a guilty plea is subjective. *United States v. Montoya–Camacho*, 644 F.2d 480, 486 (5th Cir.1981), *citing United States v. Dayton*, 604 F.2d 931, 938 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Judge Foreman stated that:

the Court feels the defendant is fully competent and capable of entering an informed plea, and that he knowingly and voluntarily does so, and that the same is supported by an independent basis of fact not only from his own statements but those representations made by the Assistant U.S. Attorney. And they contain the essential elements of the offense.

Plea Tr. 29. The evidence and statements relied on by Judge Foreman, and the procedure he used to establish a sufficient factual basis, clearly conform to the requirements of Rule 11(f).

B.

Musa also argues that the district judge failed to determine that he understood the nature of the charge, as required by Rule 11(c)(1). Musa contends that because the judge did not read the indictment to him, did not explain to him the elements of conspiracy to ensure he understood the charge, and misstated the statutory minimum sentence under 21 U.S.C. § 841(b), the court accepted his plea in violation of Rule 11(c)(1), and thus his constitutional right to due process.

■ The relevant language of the rule provides:

Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. . . .

Fed.R.Crim.P. 11(c)(1). The procedure under subsection (c)(1) is designed to ensure that the defendant knowingly and voluntarily enters a plea of guilty, which plea is an admission of all of the elements of the crime charged. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Unless the defendant understands the elements of the crime he is admitting, his plea cannot be offered knowingly and voluntarily. It is, therefore, a violation of due process for the district judge to accept it. *Id.* In *McCarthy*, the Court recognized that each case presents its own facts, and as a consequence declined to delineate a specific procedure for district judges to follow beyond the language of the rule itself, noting that "[i]n all such inquiries, '[m]atters of reality, and not mere ritual, should be controlling.'" *Id.* at 467, n. 20, 89 S.Ct. at 1171–

72, n. 20, *quoting Kennedy v. United States,* 397 F.2d 16, 17 (6th Cir.1968), *cert. denied,* 394 U.S. 1018, 89 S.Ct. 1636, 23 L.Ed.2d 43 (1969).

This circuit does not require the judge personally to address the defendant and apprise him of the charge in order to comply fully with Rule 11(c)(1). *United States v. Ray,* 828 F.2d 399, 405 (7th Cir.1987), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988), *quoting United States v. Fountain,* 777 F.2d 351, 356 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). We have instead adopted a "totality of the circumstances" approach, *United States v. Wetterlin,* 583 F.2d 346 (7th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979), to determine if a guilty plea was properly accepted. Under this approach, the circumstances we will consider, in addition to the inquiry conducted by the judge, include defendant's level of intelligence, whether he is represented by counsel, the complexity of the charge against him, and his own statements at the plea hearing. *Id.* at 354. Additionally, we can consider the evidence recited during the government's proffer. *United States v. Cusenza,* 749 F.2d 473, 476 n. 1 (7th Cir. 1984).

With all of this in mind, we turn to the transcript of the change of plea hearing. When the case was called the clerk announced it was set for a change of plea. Defendant's counsel informed the court he represented Muhannad Musa, and confirmed that Musa wanted to plead guilty. He then said, "It is our intention to plead as to the charge as alleged which alleges that he participated in the conspiracy, conspiring to distribute in excess of 500 grams of cocaine during a period of time covered in the allegations." Plea Tr. 2. Without naming the co-conspirators, counsel's statement essentially restates the charge contained in the one-count indictment. The judge then noted that "we need to settle on the amount of cocaine involved for the court to give some judgment about the possible punishment involved," to which counsel responded, "I have reviewed these matters in discussions that have been thorough and exhaustive really with both the defendant Musa, most importantly, but also indeed with the government, so that we are very familiar with the—." Plea Tr. 2–3.

After some discussion about Musa's offense level, the court directed that Musa be sworn, and then asked him questions to establish his competency. Plea Tr. 4–6. Among the answers elicited, the court learned that Musa was a 25 year-old college senior. Plea Tr. 5. The judge then asked questions to confirm that Musa was indeed represented by counsel, satisfied with his services, and was changing his plea of his own volition. Plea Tr. 7. Next, the judge asked the Assistant United States Attorney about Musa's criminal history, then he determined an offense level and criminal history category. Plea Tr. 8–9. The judge informed Musa of the loss of civil rights attendant to a felony conviction, and that confinement would be followed by a period of supervised release. Musa stated he understood. Plea Tr. 9–10. Judge Foreman then asked the prosecutor what the punishment range was that Musa faced; the assistant responded "the possible punishment is five to 40 years." Plea Tr. 10.

The judge stated, "This is an alleged violation of Section 841(a)(1) and 846 of Title 21. And the statute provides for a minimum punishment of three years, which would be 60 months, and up to possible 40 years...." *Id.* Then the judge summarized for the defendant the possible fine, years of supervised release, and other possible monetary obligations Musa faced. Plea Tr. 10–11. He told Musa he was entitled to a trial, to confront the government's witnesses, to present witnesses of his own, to take the stand or to invoke his privilege against self-incrimination, and to require the government prove its case beyond a reasonable doubt. He further informed Musa that by pleading guilty he was waiving his right to a jury trial. Repeatedly Musa indicated he understood. Plea Tr. 11–12. After informing Musa that he could depart either downward or upward from the statutory sentence, the judge then established that no one forced

Musa to change his plea. Plea Tr. 12–13. The judge asked the prosecutor to make his proffer, instructing Musa to listen carefully so that if he disagreed with any of it he could state his objections for the record. Plea Tr. 14–15. The Assistant United States Attorney made a lengthy and detailed proffer of the evidence that would have been adduced at trial. Several minutes into this recitation, Musa's attorney interrupted to suggest that he didn't "know that you need all of this as [the prosecutor's] opening statement that I guess he wants to give, but—." Plea Tr. 17. After a brief discussion, the judge asked the prosecutor if he was "ready to go into the conspiracy part of it[,]" to which the prosecutor responded, "I'm ready to get into the conspiracy involving the indicted co-conspirators at this point." Plea Tr. 18. In its entirety, the government's proffer fills ten transcript pages specifically describing multiple drug transactions (including dates, places, persons and amounts involved). Plea Tr. 15–25.

At the conclusion of the government's proffer, Musa indicated to the judge that he disagreed with most of it. Nonetheless, in response to the judge's questions, Musa admitted that he bought cocaine from one co-conspirator named in the indictment (Witkowski), and sold it to another (Cynthia Yurina). Plea Tr. 25–26. Even though Musa contested his role in the transactions, and the amounts of cocaine involved, he indicated, "I still want to enter a plea of guilty because I'm responsible for whatever I did. I am ready to take responsibility, but all that allegations presented against me is not true." Plea Tr. 27. What followed thereafter was the colloquy between the judge and the defendant reproduced *supra* at pages 1302–03.

■ On this record, it is clear that Judge Foreman complied with the reality of Rule 11(c)(1) if not the ritual. He satisfied himself that the defendant was adequately represented by counsel and was sufficiently

intelligent to understand the proceedings. His counsel represented to the court that he had engaged in exhaustive discussions with the defendant about the charge. Indeed, to questions posed by the judge, Musa repeatedly stated that he understood, and still wanted to plead guilty.

■ Counsel on appeal argues, however, that in spite of Musa's assurances to the court that he understood, he in fact did not understand what a conspiracy is, and thus did not enter a voluntary and knowing plea. We reject that argument. The charge simply alleged Musa's participation in a conspiracy to distribute cocaine. During the government's proffer, there was abundant evidence of Musa's involvement with others in drug transactions. Moreover, Musa himself admitted to the court that he engaged in drug transactions with two of the co-conspirators named in the indictment.[2] "[W]hile the subtleties of conspiracy law may be the bane of criminal law students, the basic principle is easily understood: a group of people agreeing to do something illegal." *United States v. Carter*, 815 F.2d 827, 829 (1st Cir.1987). As in *Carter*, we see nothing in the record to indicate that Musa did not understand the conspiracy charge.

■ Musa also contends that it was never made clear to him whether he was pleading guilty to the amount of cocaine charged or the amount he claimed to have bought and sold. But as the government correctly points out, the amount of drugs involved in a conspiracy to distribute is relevant to the sentence sought by the government and imposed by the court, not to the defendant's guilt. *United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir.1989); *see also United States v. Ocampo*, 890 F.2d 1363, 1373 (7th Cir.1989). Moreover, Judge Foreman clearly remarked on the record that the amount of drugs would have to be determined at some point for him to "give some judgment about the pos-

2. Indeed, on direct examination at his sentencing hearing, Musa's counsel asked him: "And was it your understanding that you pled guilty to entering into a conspiracy with some others that were named insofar as the distribution of

cocaine?" Musa answered: "It was a conspiracy to distribute. It wasn't specified amounts." Report of Proceedings for Sentencing Hearing ("Sent. Tr.") at 24.

sible punishment involved." Plea Tr. 2–3. Thus, the issue of the amount of drugs involved could, and did, wait to be resolved at the sentencing hearing.

■ Musa also claims that he was confused about the possible penalty because the judge misstated the statutory minimum to be "three years, which would be 60 months" rather than five years. Just before the judge made this statement, he asked the prosecutor on the record what the possible sentence was for Musa's offense, and the prosecutor responded "[y]our Honor, the possible punishment is five to 40 years." Plea Tr. 10. Even if Musa did not hear the prosecutor's response, we assume, given that Musa was a senior in college, he could do the arithmetic necessary to determine that 60 months equals five years. Although this was a mathematical misstatement on the judge's part,[3] we hold it was harmless error under Fed.R.Crim.P. 11(h).

In sum, we hold that the district judge, in substance if not in form, properly accepted defendant's guilty plea pursuant to Rule 11. We find no reversible error.

### III.

We turn now to the second issue Musa raises on appeal: that he was improperly sentenced. This argument also has two prongs. First, he contends that Judge Foreman relied on inaccurate information at the sentencing hearing, which violated his right to due process. Second, Musa argues that the judge failed to make written findings as required by Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure.

### A.

■ There is no question but that a criminal defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Nonetheless, there are few restrictions on the type of information the sentencing court may consider. *United States v. Marshall*, 719 F.2d 887 (7th Cir. 1983). Hearsay evidence is one of the types of information a court may consider. *Cusenza*, 749 F.2d at 478. To succeed on a challenge to a sentence, a defendant must show that the information before the court was inaccurate, and that the court relied on it. *United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir.1984).

■ The only two people to testify at Musa's sentencing were Agent Bratcher and defendant himself. What Judge Foreman faced was a credibility contest, which Musa lost. Musa's problem on appeal is that he cannot show that the court relied on inaccurate information when it sentenced him. He simply denies the truthfulness of the statements Agent Bratcher testified that Musa's co-conspirators made to the agent. What he overlooks is that Judge Foreman had an opportunity to observe and hear Musa's co-conspirators during their own change of plea hearings. And he observed Musa himself at both the plea and sentencing hearings. It is no surprise that he found Musa not credible after repeatedly hearing Musa, at his change of plea hearing, deny that he ever obtained cocaine for Witkowski, and then admit at his sentencing hearing that on at least one occasion he did in fact supply Witkowski with cocaine. Sent. Tr. 24–25. Judge Foreman stated on the record that he doubted Musa's credibility for other reasons as well, such as not being able to remember the names that correspond to the initials of his cocaine customers in his calendar,[4] and that a search of his apart-

---

**3.** Interestingly, Musa asks us to overlook the misstatement contained in his Notice of Appeal, but not the district judge's misstatement of the minimum sentence. To err is human, as defendant's trial counsel has learned. It should come as no surprise that members of the bench are equally as human as members of the bar.

**4.** To be precise, Judge Foreman stated:

The other interesting thing which makes me doubt, frankly, your credibility, Mr. Musa, you can't remember things. You can't remember Al's [Musa's source] name. You can't remember the names of all of those initials that are on your calendar. It's patent-

ment disclosed scales and other drug paraphernalia consistent with drug dealing. Sent. Tr. 61. All of this is perfectly appropriate information on which a sentencing judge may rely. Because Musa offers nothing on appeal to show the inaccuracy of the information on which Judge Foreman relied—other than his own uncorroborated version of the facts—he cannot establish a violation of his due process rights, and we will not disturb the sentence.

### B.

Finally, Musa argues that the case should be remanded for resentencing because the district judge failed to make written findings regarding the disputed factual information contained in the presentence investigation report ("PSI"). Defendant, after having an opportunity to review the PSI prepared by the probation office, timely filed his objections to three paragraphs contained therein. Specifically, Musa objected to (1) Paragraph 18, which sets the total amount of the cocaine involved in the conspiracy at between 2 and 3.5 kilograms; (2) Paragraph 25, which sets his total offense level at 26; and, (3) that portion of Paragraph 32 stating the statutory minimum sentence option of five years. Once Musa filed these objections, the provisions of Fed.R.Crim.P. 32(c)(3)(D) were triggered. The rule provides:

> If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report

thereafter made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(c)(3)(D).

As we have often noted when addressing this rule, it serves a dual purpose. The first is to safeguard a defendant's due process right to be sentenced on the basis of accurate information. The second is to provide a clear record both for reviewing courts and for the Bureau of Prisons when making certain decisions about an inmate, such as his or her parole guideline score. *United States v. Rodriguez–Luna,* 937 F.2d 1208, 1213 (7th Cir.1991); *United States v. Montoya,* 891 F.2d 1273, 1281 (7th Cir.1989); *United States v. Mischler,* 787 F.2d 240, 246 (7th Cir.1986); *United States v. Eschweiler,* 782 F.2d 1385, 1387 & n. 7 (7th Cir.1986).

Both purposes of the rule are served when the sentencing judge makes findings concerning the disputed information. *Rodriguez–Luna,* 937 F.2d at 1213–14. In this case, at the conclusion of all the testimony at the sentencing hearing, Judge Foreman stated on the record his findings regarding Musa's objections:

> So with regard to paragraph 18 of the presentence report, I find it to be accurate. With regard to paragraph 25, I find that to be accurate, which is an offense level of 26 after being given credit for the two levels on his plea. And with regard to paragraph 32, the Court finds that there would be a mandatory minimum of five years in view of the Court's finding that the cocaine involved is in excess of 500 grams.

Sent. Tr. 62. Then again later, just before imposing sentence on Musa, the judge stated:

> All right. Just stay there. Let me go ahead and finish here. I guess the Court is obligated to make one other statement, and that is that I find the other factual statements in the presentence report, in addition to those in paragraph 18, 25 and

---

ly obvious to me that you're not telling the truth about that. And if you're not telling the truth about that, then how can the Court

believe you with regard to these other matters?
Sent. Tr. 61.

32 to be accurate, and I adopt those as my findings of fact with regard to this. Sent. Tr. 69.

A sentencing judge may properly adopt the findings of the PSI as his or her own to satisfy the requirements of the rule. *United States v. Rosales,* 917 F.2d 1220, 1221 (9th Cir.1990). But the judge must still attach a copy of those findings to the PSI sent to the Bureau of Prisons. The PSI here, as Musa correctly points out, has no such attachment. The record on appeal, however, does contain a twelve-page transcript of the portion of the sentencing hearing wherein Judge Foreman adopted the findings of the PSI as his own. This transcript is entitled "Statement of Reasons," and was filed with the clerk of the district court nine days after the sentencing hearing. Although filing a "Statement of Reasons" with the district court clerk alone is insufficient to satisfy the letter of the rule, we nonetheless find remand unnecessary, as we did in *Rodriguez–Luna* where we were faced with similar facts. *See* 937 F.2d at 1213–14 (sentencing judge made findings on the record, but failed to attach written report to PSI). And we similarly, as in *Rodriguez–Luna,* direct the United States Attorney to see to it that Judge Foreman's findings are attached to the PSI before it is transmitted to the Bureau of Prisons. We hold, therefore, that Defendant Musa was properly sentenced.

### IV.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.