9 F.3d 113
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jorge T. GARCIA, a/k/a George Garcia, Defendant-Appellant.
 No. 91-1433.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 23, 1993.*
Decided Oct. 5, 1993.
 
 Before CUMMINGS, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 The defendant, Jorge T. Garcia, pleaded guilty to conspiracy to possess with intent to distribute in excess of five kilograms of a mixture containing cocaine, in violation of Secs. 841(a)(1) and 846, and Title 18, United States Code, Section 2. The sentence received by the defendant was twelve and one-half years imprisonment.
 
 
 2
 On direct appeal, Garcia argues that the district court and his trial attorney failed in their duties owed to him, that these errors of the district judge and his lawyer caused Garcia to misunderstand the facts and the law in his case, and that this misunderstanding resulted in an involuntary plea of guilty. On the basis of these alleged failures and misunderstandings, Garcia asks us to reverse his conviction, vacate his sentence, and remand his case to allow him to plead anew. We deny all of these requests, and affirm the conviction and sentence.
 
 I. Rule 11 Claims
 
 3
 Garcia claims that the district court judge violated various rules, most importantly Federal Rules of Criminal Procedure 11(c)(1) and 11(f).
 
 A. Voluntariness of Guilty Plea
 
 4
 It is argued that the court failed to make a proper inquiry to determine whether or not Garcia understood the nature and consequences of his guilty plea as is required Rule 11(c)(1). Garcia claims that this failure caused him to plead guilty without knowing the actual consequences of his plea.
 
 
 5
 In United States v. Montoya, 891 F.2d 1273 (7th Cir.1989) we set forth the standard which is to apply in this case and stated that, although failure to comply with Rule 11(c)(1) constitutes reversible error, literal compliance is not required. Id. at 1292. Rather, the judge must see to it that the purpose of Rule 11(c)(1) is served. That purpose is "to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." Id. (quoting McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969)). This purpose is served by "looking at the total circumstances surrounding the plea" to determine whether or not the defendant was informed of his rights. Id.
 
 
 6
 In United States v. Musa, 946 F.2d 1297 (7th Cir.1991) we set forth certain elements to be considered when examining the "totality of the circumstances." "Under this approach, the circumstances we will consider, in addition to the inquiry conducted by the judge, include defendant's level of intelligence, whether he is represented by counsel, the complexity of the charge against him, and his own statements at the plea hearing." Id. at 1304.
 
 
 7
 In considering these factors we find here that in accepting the plea agreement the district judge engaged in a colloquy with Garcia covering all the areas of inquiry dictated by Rule 11.
 
 
 8
 Garcia, who was represented by counsel, indicated to the court that he had read and understood the plea agreement and discussed it with his attorney prior to signing it. Garcia advised the court that he wished to go forward with his plea of guilty. Garcia also told the court that he understood the penalties he faced as well as the substantive rights he would give up by pleading guilty.
 
 
 9
 The court explained the charge of conspiracy to distribute cocaine. Before formally accepting Garcia's plea the court directed the government to recite the factual basis for the guilty plea.
 
 
 10
 Garcia now asserts that he lacked facility with the English language which caused him to mistakenly enter the guilty plea. Any such inadequacy would, of course, be relevant to the issue of Garcia's comprehension of the nature and consequence of his guilty plea. However, Garcia's attorney asserted under questioning by the court at the plea hearing that Garcia understood and could both speak and read English. Nevertheless, the court took the precaution of having an interpreter available to assist Garcia throughout the proceeding. Moreover, Garcia himself directly answered several of the judges questions, which were asked in English, without recourse to the interpreter. When the judge informed Garcia of the possible maximum sentences he faced, and of the rights he was giving up by pleading guilty, he answered through the interpreter that he understood. At no time did Garcia claim not to understand what he was pleading guilty to, or not to understand what the proceedings meant.
 
 
 11
 As to understanding the nature of the charge against him, which was set forth in the plea agreement and described by the district judge, we have previously stated in Musa "the basic principle of [conspiracy law] is easily understood: a group of people agreeing to do something illegal." Id. at 1305 (citing to United States v. Carter, 815 F.2d 827, 829 (1st Cir.1987)). Garcia's claim that the concept of a conspiracy was too complex for him to understand is not well founded.
 
 
 12
 The totality of the circumstances surrounding the entry of Garcia's plea of guilty indicates that the district judge correctly determined that Garcia understood the nature and consequences of his guilty plea in compliance with Rule 11(c)(1).
 
 B. Adequacy of Court's Finding of Fact
 
 13
 The district court is required by Federal Rule of Criminal Procedure 11(f) to make a determination that there was a factual basis to support a guilty plea in this case to a charge of conspiracy to distribute cocaine. Garcia claims that the court failed to make this determination. He agrees that this failure led to the court accepting a mistakenly-made guilty plea when there were inadequate facts to support the charge against him.
 
 
 14
 Rule 11(f) requires the court to make "such inquiry as shall satisfy it that there is a factual basis for the plea." We have held that "[t]he test for whether there is a sufficient factual basis for a guilty plea is subjective." United States v. Musa, 946 F.2d 1297, 1302 (7th Cir.1991). Moreover, we have also held that "[a] judge may find the factual basis from anything that appears on the record." Id. (citing United States v. Lumpkins, 845 F.2d 1444, 1450 (7th Cir.1988)).
 
 
 15
 The judge directly questioned Garcia. The judge asked Garcia if he had read and understood the plea agreement he signed, and Garcia answered in the affirmative.
 
 
 16
 The Assistant United States Attorney presented a summary of the facts which he would have presented at Garcia's trial. Specifically, the government would have shown that Garcia had made several multi-kilogram quantity sales of cocaine to two individuals, Gary Baranyk and Julio Hernandez. Garcia's attorney conceded that Garcia had sold cocaine to Gary Baranyk in 1987 and 1988, and that he pleaded guilty to those activities.
 
 
 17
 In Musa we found that the defendants own statements and the governments proffer were sufficient to establish the factual basis required under Rule 11(f) for a plea of guilty to a charge of conspiracy to distribute cocaine. Id. at 1303. Here there was no less.
 
 
 18
 The court's factual findings were sufficient to comply with the Rule 11(f).
 
 II. Sentencing Claim
 
 19
 Garcia claims that there was a dispute between the prosecution and his counsel regarding the content of his guilty plea, and that in consequence Garcia was sentenced for an offense greater than that to which he pleaded guilty. He claims that this dispute gave rise to a duty on the part of the district judge to make a written finding regarding the disputed facts, or a written determination that the disputed matter was not relied on for sentencing. Garcia's claim comes down to an argument that he received a prison sentence which was too long, because the judge considered matters to which Garcia had never pleaded guilty.
 
 
 20
 The record does not support Garcia's interpretation. Garcia signed a written plea agreement indicating that he was involved in a conspiracy with nine other defendants and "persons known and unknown" to "possess with intent to distribute in excess of five (5) kilograms of a mixture containing cocaine." In exchange for the guilty plea, the government agreed to drop the second of two counts against Garcia.
 
 
 21
 The plea agreement makes no promises regarding sentencing. It states clearly that the judge is not a party to the agreement, and he may impose the maximum sentence. The plea agreement is also quite clear that the maximum possible sentence for the crime is life imprisonment.
 
 
 22
 At his plea hearing Garcia's counsel attempted an eleventh hour revision of this unambiguous document, claiming that Garcia's plea was limited to carrying on a drug business with Gary Baranyk, but not with Julio Hernandez. However, the agreement which Garcia admitted to having read, understood, and signed is unambiguous, and it does not include this caveat.
 
 
 23
 We have held that a plea agreement is a contract. United States v. Verrusio, 803 F.2d 885 (7th Cir.1986). We have also held that where there is ambiguity in the agreement, the district court is to determine its meaning according to objective standards, and that we should set aside its determination only where it is clearly erroneous. United States v. Fields, 766 F.2d 1161 (7th Cir.1985).
 
 
 24
 In this case there was no ambiguity, and no need to apply any standard of interpretation. Garcia got what he bargained for. The government dropped one count, and Garcia was sentenced on the other.
 
 
 25
 As to sentencing, we have recently held that "sentencing decisions of the district court, including those concerning the amount of drugs involved in a conspiracy, are reviewed deferentially, and the court's finding of fact will not be disturbed unless clearly erroneous." United States v. Cagle, 922 F.2d 404, 406 (7th Cir.1991). See also U.S. v. Goines, 988 F.2d 750, 777 (7th Cir.1993), United States v. Pitz, Nos. 92-1014 & 92-1019, slip op. at 5 (7th Cir. August 9, 1993).
 
 
 26
 Under the United States Sentencing Guidelines the court was allowed when sentencing Garcia to refer to the entire quantity of drugs involved in the conspiracy reasonably foreseeable by him. Goines at 775, United States v. Tolson, 988 F.2d 1494, 1502 (7th Cir.1993), United States v. Sergio, 934 F.2d 875, 878 (7th Cir.1991), United States v. Osborne, 931 F.2d 1139, 1150 (7th Cir.1991). Furthermore, Garcia's written plea agreement indicates that he pleaded guilty to involvement in the entire conspiracy, not to some limited portion.
 
 
 27
 The district court's determination of Garcia's participation in the conspiracy, and quantity of cocaine involved in the conspiracy which the court determined he knew about or should reasonably have known about, was not plain error.
 
 
 28
 The Presentence Report indicated that the total amount of cocaine handled by the conspiracy was 50-150 kilograms. Garcia's trial counsel claimed that his involvement was no more than ten kilograms sold to Gary Baranyk in 1987 and 1988. The government submitted that Garcia sold both to Baranyk, as he admitted, as well to Julio Hernandez in 1989, who purchased the drugs for the Blas brothers in Milwaukee. The government showed that Garcia began selling in the conspiracy by under-bidding another cocaine wholesaler to sell to the Blas brothers' ring. The government also recounts that telephone toll records indicated that Garcia was in contact with various parties to the conspiracy over a two-year period.
 
 
 29
 The prosecution asked the court to find that Garcia knew or should have known of quantities of fifty to one hundred and fifty kilograms. The court, considering all the evidence before it, apparently gave some weight to Garcia's assertion that his involvement in the conspiracy was more limited than the government claimed. The court believed that Garcia's responsibility was 40 kilograms. This is the amount which the court believed that Garcia knew or should have reasonably foreseen to have been involved in the conspiracy's transactions during the time-frame of his involvement.
 
 
 30
 The court's conclusion was not plainly erroneous.
 
 III. Ineffective Assistance of Counsel Claim
 
 31
 Garcia claims that he received ineffective assistance of counsel. He asserts that his trial attorney failed to render advice sufficient to allow him to make an informed and conscious choice to plead guilty.
 
 
 32
 To prove ineffective assistance of counsel, "[t]he defendant must show that here is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. 688, 694, 104 S.Ct. 2052 (1984).
 
 
 33
 Under Strickland counsel's performance must be shown to have been both ineffective and prejudicial. Defendant succeeds in demonstrating neither.
 
 
 34
 It is asserted by Garcia that there was "confusion" regarding the facts to which he pleaded guilty. Specifically, he claims that he repeatedly refused to admit having sold more than four kilograms of cocaine notwithstanding that the written plea agreement indicated his involvement in a conspiracy to distribute "in excess of five" kilograms. Garcia therefore concludes that his counsel failed to render advice sufficient to allow him to make an informed and conscious choice to plead guilty, because he had been led to believe that his guilty plea would be limited to a sale of four kilograms.
 
 
 35
 There is nothing in the record indicating that any such "confusion" existed when Garcia pleaded guilty. First, the plea agreement was unambiguous. It says that he was involved in a conspiracy involving five or more kilograms of cocaine. Garcia admitted that he read, understood, and signed it. Second, Garcia himself at his sentencing hearing stated that "[e]very time that Mr. Baranyk and I talked it would be two kilograms, two kilograms and two kilograms." This indicates an ongoing relationship in which cocaine is sold in units of two kilograms. Garcia's comment implies that this went on three or more times. Two plus two plus two is six kilograms, not four. Garcia does not, for example, say that these two kilogram sales occurred "only twice," which would indicate total sales of four kilograms, as he now claims. He does say, in somewhat garbled fashion, that he never sold four kilograms "at one time."
 
 
 36
 The claim defendant now makes, that he admitted to selling only a total of four kilograms, was refuted out of his own mouth at his sentencing hearing. There is no evidence that Garcia had any confusion about what he admitted doing, or what he was pleading guilty to. His "confusion" claim provides no basis under Strickland for finding ineffective assistance of counsel.
 
 
 37
 Garcia also makes the claim that his defense counsel should have "clearly and forcefully" brought to the court's attention that he "admitted selling four kilograms while pleading guilty to conspiracy in excess of five." But Garcia, at his sentencing hearing admitted, in effect, to selling at least six kilograms. Moreover and significantly, he is responsible for all of the cocaine handled by the conspiracy which he knew or had reason to know of. He cannot limit his guilty plea in the way he is suggesting now. It is not ineffective conduct on his attorney's part that he did not try to do so at the time.
 
 
 38
 Even if the actions of counsel could be considered ineffective assistance, there could be no prejudice. Once Garcia's counsel raised the issue of the amount Garcia sold, the government was willing and able to present clearly persuasive evidence to refute his claim. In other words, even if Garcia's attorney was guilty of the deficiencies alleged there is no basis to believe that such conduct was prejudicial.
 
 
 39
 Finally, we must point out, as we have in several prior cases, the difficulty of raising an ineffective assistance of counsel claim for the first time on direct appeal. Unless the alleged ineffective assistance is clearly evident from the trial record, the most a defendant can hope to receive is a remand to examine any questionable conduct by trial counsel. U.S. v. Davenport, 986 F.2d 1047, 1050 (7th Cir.1993).
 
 
 40
 The absence of any evidence of counsel's deficient performance is a guarantee of defeat on appeal. In this case, we are faced with a silent record which does not demonstrate any error by Garcia's attorney. Furthermore, defeat on direct appeal of this issue effectively closes off further consideration of a defendant's ineffective assistance of counsel claim in a subsequent 28 U.S.C. Sec. 2255 proceeding. Id., United States v. Taglia, 922 F.2d 413, 418 (7th Cir.1991). "[A] defendant who presents an ineffective-assistance claim for the first time on appeal has little to gain and everything to lose." Davenport at 1050.
 
 
 41
 Garcia's claim of ineffective assistance of counsel cannot succeed on the record before us. Moreover, based on the undisputed evidence, no prejudice could result from the purported ineffective assistance rendered by Garcia's counsel and thus such claim is without merit.
 
 IV. Conclusion
 
 42
 For the reasons stated above the conviction and sentence of Jorge T. Garcia are AFFIRMED.
 
 
 
 *
 By order of the court, this appeal was submitted for decision without oral argument