**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Randall E. COONCE, Defendant–Appellant.**

No. 90–3516.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1991.

Decided April 14, 1992.

Thomas E. Karmgard, Asst. U.S. Atty., Office of the U.S. Atty., Danville, Ill. and Rodger A. Heaton, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Stephen Ryan (argued), Ryan, Cini, Bennett & Radloff, Mattoon, Ill., for defendant-appellant.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Randall Coonce pled guilty to four counts of mail fraud under 18 U.S.C. § 1341, and received consecutive five-year sentences on Counts I, II, and III, to be followed by five years' probation on Count IV. After entering his plea, Coonce objected to the content of the Presentence Report (PSR), which contained descriptions of uncharged misconduct. Specifically, the PSR stated that in addition to committing mail fraud, he had participated in a criminal enterprise devoted to defrauding senior citizens by misrepresenting insurance policies as investment vehicles. Coonce moved to have the PSR stricken and redrafted. The court denied the motion. He then moved to withdraw his plea of guilty, alleging that the plea was unknowingly and unintelligently made because he did not realize that the uncharged activity of conspiracy or misrepresentation of products could be mentioned in the PSR and considered at sentencing. The court denied this motion as well. On appeal, Coonce alleges that the district court erred: (1) in denying his motions to strike the PSR and withdraw his guilty plea, (2) in placing the burden on him to prove that the PSR was inaccurate, (3) in finding that the PSR was reliable, and (4) in giving vent to its bias against the defendant by giving him excessive, consecutive sentences, disproportionate to those given to other participants in the scheme.

## I. BACKGROUND

From 1983 to 1988, Randall Coonce ran a life insurance agency with offices in Charleston, Illinois and Indianapolis, Indiana. He sold life insurance as well as supervising several sales agents in the Charleston and Indianapolis offices. Though he sold insurance for several companies, most of the policies he sold were from the Inter-state Assurance Company. Initially, he contracted with Inter-state in 1984, and eventually became its regional marketing general agent, in charge of sales in several midwestern states.

Since 1980, Coonce had also been involved in wagering on sporting events. At first his bets were around $500 per game, but in 1984 his average wager escalated to between $3,000 and $4,000. In early 1986, Coonce was in serious financial difficulty as a result of substantial gambling debts, and to pay them he began to convert clients' insurance premiums to his own use. For the most part, the scheme worked as follows. As a general rule, Inter-state required initial premium payments on life insurance policies to accompany the customer's application, and the policy was effective when the application and premium were received. In some cases, however, it accepted applications without premiums, requiring payment when the approved poli-

cy was delivered to the customer. Applications processed in this way were known as "C.O.D." policies, which were not effective until the receipt of the initial premium, after Inter-state had approved the application and sent a policy to the customer. When customers sent their premium checks and applications to Coonce for delivery to Inter-state, he would deposit the check in his own account. Next, he would mark the application "C.O.D." without telling his client and send it to Inter-state. When the application was approved and returned to Coonce for delivery to the customer, he would forward the premium payment. At first he made payments from his own account, having used the converted funds in the interim to pay his gambling debts. Later on he was unable to keep current on his debts, and he began to pay off the C.O.D. policies with stolen funds of more recent date, "robbing Peter to pay Paul." On some policies he took the money and never made any payment to Inter-state. Besides this "C.O.D. policy" scam, Coonce also collected annual premium payments from customers without Inter-state's knowledge or consent, depositing them into his own account. In January of 1988, Coonce told Inter-state of his activities, and the company terminated his contract.

During this same period, Coonce and his agents in Charleston and Indianapolis participated in a scheme to defraud senior citizens. Using a list of senior citizens that Coonce purchased from the National Association of Retired Persons (NARP) as leads, both Coonce and his agents contacted elderly people and convinced them to buy expensive life insurance policies that they misrepresented to be investment programs. The premiums and applications from these senior citizens were mailed to Coonce, who in turn mailed them to Inter-state, who returned them to Coonce if approved, who did whatever else was necessary to complete his fraudulent scheme. For example, he allowed an agent with a suspended insurance license to use "Randy Coonce" as an alias and continue to sell policies. In other cases the agents found it necessary to promise that interest would be paid on the "investment program" and Coonce went along by sending "interest checks" out of his own business account, perpetuating the agents' misrepresentation.

After Coonce admitted his misdeeds regarding the C.O.D. policies to Inter-state the company initiated civil proceedings, seeking to recover the premiums he had stolen to pay his debts. Consulting with his attorney, Coonce realized that he might also face criminal charges and had his lawyer contact the United States Attorney to discuss the matter. After reviewing the case the U.S. Attorney called Coonce's attorney and proposed a plea bargain requiring that Coonce admit that he had conspired with his sales agents to misrepresent insurance policies as investment programs for senior citizens. Coonce denied having been part of a conspiracy or misrepresenting his products, and refused the guilty plea offer. A few months later the government proffered a new plea agreement alleging misrepresentation of products but not conspiracy, which Coonce refused to accept, adamantly denying any misrepresentation. With negotiations at an impasse, the government obtained a thirty-six count indictment, leaving out any charge of conspiracy, but continuing to allege misrepresentation of products. Faced with this Coonce resumed plea negotiations and subsequently agreed to plead guilty to a four-count information alleging mail fraud but not conspiracy or misrepresentation. He further agreed to cooperate with the government in investigating other matters arising out of or related to his conduct. The government, in turn, agreed to withdraw the indictment so that Coonce would only have to plead guilty to a four-count information.[1] The plea agreement clearly stated that at sentencing the defendant could present evidence mitigating the seri-

---

1. Federal Rule of Criminal Procedure 7(a) requires the United States to obtain an indictment where the offense charged may be punished by death or imprisonment for a term exceeding one year or at hard labor. Such offenses may be prosecuted by an information if the defendant waives prosecution by indictment. Fed. R.Crim.P. 7(b). Coonce waived the right when accepting the plea agreement. Plea Agreement, Appellant's Appendix at 20; R. Doc. 1.

ousness of his offense, while the government could present evidence in aggravation of his crime. The information Coonce pled guilty to was crafted to include only that conduct occurring before the Federal Sentencing Guidelines took effect, making this a "pre-guidelines" case.

The Probation Office then prepared the PSR, which gave a detailed chapter and verse description of the entire scheme to defraud senior citizens through misrepresentation of the insurance policies as investments. Coonce objected to this and filed a "Motion to Strike Presentence Report and for Order Requiring Redrafting of the Presentence Report." Coonce's argument was that he pled guilty to neither conspiracy nor misrepresentation, and thus was of the opinion that it could not be considered in his sentencing. The court denied the motion, prompting Coonce to move to withdraw his plea as being unintelligently given because he did not know that the uncharged conduct could be used against him. This motion was also denied. Next, Coonce filed a pleading pursuant to Fed.R.Crim.P. 32,[2] alleging that the PSR contained factual inaccuracies. Specifically, he claimed that the PSR was inaccurate when it described his behavior as a "criminal enterprise" that misrepresented products and targeted senior citizens. The court considered these charges at the close of the sentencing hearing. As to the PSR's use of the term "criminal enterprise" to describe Coonce's scheme, the court said that it "need make no finding about the factual accuracy of it since it is an opinion." Sentencing Tr. at 173. Importantly, however, the court also made statements indicating that it agreed with this opinion: "The probation officer's assessment is cor-

rect. I agree with the statements that the probation officer makes about the defendant and the way he should be viewed by the court." Sentencing Tr. at 175. Next the court concluded that the scheme targeted senior citizens, taking account of the fact that the defendant obtained a customer list from NARP and directed his sales program at older people. Further, the court took judicial notice of testimony from the guilty plea proceedings of Coonce's agents, who stated that Coonce actively participated in their scheme to bilk the elderly, providing the list of names, mailing the applications to Inter-state, and allowing an agent with a suspended insurance license to use his (Coonce's) name as an alias. Finally, the court held that the allegations of misrepresentation were justified in light of testimony by case agents, statements of the victims, and the defendant's history of shady dealings.[3] Coonce testified at the sentencing hearing, denying any conspiracy or misrepresentation, but the court found his testimony unbelievable. Having found the PSR was accurate and reliable, the court imposed its sentence of three consecutive five-year terms followed by five years' probation.

## II. ISSUES

Coonce raises five main issues on appeal: (1) Whether it was error to deny his motion to strike the PSR; (2) whether the court should have granted his motion to withdraw his guilty plea; (3) whether the court ever made an express finding that Coonce had headed a conspiracy before using that against him in sentencing; (4) whether Coonce or the government should have had the burden of proving the accuracy or inaccuracy of statements in the PSR, and if

---

**2.** Because this is a pre-guidelines case, all references to Fed.R.Crim.P. 32 are to the form of the Rule applicable to offenses committed prior to November 1, 1987 (the effective date of the Sentencing Guidelines). As the Rule is used in this case, however, there is no substantive difference between the former version and the Rule in effect today.

**3.** The PSR revealed that in 1985 the Illinois Department of Insurance entered a order revoking Coonce's insurance license due to charges that he had misrepresented insurance policies

and engaged in fraudulent business activities. He regained his license a year later after agreeing to a Stipulation and Consent Order with the Department and paying a fine and agreeing to abide by conditions designed to prevent future misrepresentations or fraud. Presentence Report, Appellant's Br., Addendum II, at 3. Additionally, three witnesses testified as to a new fraudulent scheme Coonce had masterminded after he went out of the insurance business in 1988. Sentencing Tr. at 175.

Coonce did, whether he satisfied that burden; and (5) whether the trial court abused its discretion by giving Coonce a longer sentence than his co-conspirators, by imposing consecutive sentences even though all of the fraud counts arose from the same course of conduct, and by giving an excessive sentence enhanced by a preconceived bias.

### III. DISCUSSION

#### A. *Motion to Strike Presentence Report*

After reading the PSR the defendant made a motion requesting the court to strike the report and order that it be redrafted. He was upset that the prosecution's version of the offense, included in the PSR, gave a detailed description of the alleged conspiracy to defraud senior citizens. Further, in the "Evaluation" section of the report the probation officer noted the prosecution's description of the scheme and wrote that "Randy Coonce was thus the organizer of this criminal enterprise. Criminal enterprise is an appropriate term for the illegal activity perpetrated by Randall Coonce." Presentence Report, Appellant's Br., Addendum II, at 21. The defendant objected to these statements on the ground that he had only pled guilty to mail fraud, not conspiracy or misrepresentation of products, and so did not believe that information relating to uncharged conduct could be used against him at sentencing. He also reminded the court that he had persistently denied any involvement in a conspiracy or a scheme to misrepresent products, and had accepted the plea bargain only because he believed it would be silent as to any such charges. Even the indictment the government filed with the court contained no charge of conspiracy, he continued, and so any mention of that charge in the PSR was unfair and came as a complete surprise. The trial court denied the motion, and Coonce now claims that this denial was erroneous and that the court violated his Fifth Amendment due process rights by relying on false or unreliable information in sentencing.

■■■ This is a pre-Sentencing Guidelines case. As such, the sentencing court was allowed to consider the defendant's *actual* conduct, as well as anything pertaining to the crimes charged. *United States v. Castellanos,* 904 F.2d 1490, 1494 (11th Cir.1990). This is known as "real offense" sentencing, and under this model a judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). Further, 18 U.S.C. § 3661 is to the same effect. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. A court may even consider evidence that would be inadmissible at trial. *United States v. Johnson,* 903 F.2d 1084, 1089 (7th Cir.1990); *United States v. Marshall,* 719 F.2d 887, 891 (7th Cir.1983). As this court has observed:

> The sentencing stage of the trial is one of the most important parts of the criminal process. In order for a judge to be well advised of all the facts surrounding the defendant's background, and particularly in view of the judge's obligation to the general public, as well as to the defendant, to be fair, reasonable and just, it is imperative that he be allowed to draw upon a wealth of information concerning the defendant's background, from his date of birth up to and including the moment of sentencing.... In order to render justice to all the judge must be able to impress upon a defendant through the expansive contents of an all encompassing sentencing report that we are a country of laws and not men. The criminal must learn that with every cherished right he enjoys he also assumes a corresponding obligation to live according to the law of the land. Our laws are for the protection of all mankind and not just the criminal. Thus, if the defendant has displayed a propensity toward criminal activity over a period of years and

has not learned from his past mistakes and transgressions of the law it is important that the judge take these matters into consideration including those cases where the crimes may have been *nolle prosequi* or read into the record and considered by the judge in sentencing the defendant for another crime, but relieving the defendant of a formal judgment of conviction on the particular crimes read into the record.

*United States v. Madison,* 689 F.2d 1300, 1314–15 (7th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983). *Madison* makes it clear that a sentencing judge can and must consider a defendant's *entire* history in order that he might make an informed decision as to the proper punishment.

 Despite these cases and the statute, Coonce relies on a policy statement set out in the United States Sentencing Commission's *Guidelines Manual* in Chapter 1, Part A(4)(a) (1991). This section discusses the Commission's struggle in deciding whether to adopt a "real offense" system of the type used before the guidelines took effect, or a "charge system," which excludes consideration of conduct that is not an element of the offense. Coonce places great weight on the Commission's statement that it has "moved closer to a charge offense system." *Id.* Thus, he argues, the court should have stricken all portions of the PSR referring to the alleged conspiracy or misrepresentation, because he was not charged with those crimes.

This argument is without merit and thus is entitled to no further elucidation for all of the crimes occurred *before* the effective date of the Sentencing Guidelines, and so the commentary of the Sentencing Commission is inapplicable. In fact, we find Coonce's argument to be disingenuous, as he knowingly entered a plea agreement specifically tailored to *avoid* the Sentencing Guidelines. Thus, the motion to strike the parts of the PSR referring to uncharged crimes was properly denied.

 Alternatively, Coonce argues that the information regarding the conspiracy and misrepresentation was either false or unreliable, and thus when the court considered that information it violated his Fifth Amendment due process rights. There is no doubt that a criminal defendant has a due process right to have the court consider only accurate information when imposing sentence, and that this right may be violated when the court considers information which is inaccurate. *Tucker,* 404 U.S. at 447, 92 S.Ct. at 591–92. To succeed on such a claim the defendant must demonstrate that the information before the court was inaccurate and that the court relied on it. *United States v. Musa,* 946 F.2d 1297, 1306 (7th Cir.1991). The only evidence Coonce presented to rebut the allegations of conspiracy and misrepresentation was his own testimony. The court, however, chose not to believe him, finding he lacked credibility. Trial courts have the opportunity to observe witnesses and judge their demeanor, and are therefore in the best position to make such credibility determinations, which they may certainly rely on in deciding whom and what to believe. *See id.* at 1306–07. Having failed to prove that the PSR was inaccurate, Coonce cannot complain that the court relied on it, and his due process claim fails. Coonce's other allegations that the PSR was inaccurate are discussed below in parts III(C) and (D).

### B. *Withdrawal of the Guilty Plea*

After the court denied his motion to strike the PSR, Coonce moved to withdraw his guilty plea. He alleged that denial of the motion to strike rendered his plea unknowing and unintelligent because he never expected that the conspiracy and misrepresentation allegations could be used against him; had he known they could, he would not have pled guilty. We review the court's denial of Coonce's motion for an abuse of discretion. *United States v. McFarland,* 839 F.2d 1239, 1240 (7th Cir. 1988).

 Federal Rule of Criminal Procedure 32(d) allows a defendant to withdraw a plea before sentencing for "any fair and just reason." The defendant bears the burden of proving such a reason exists. *See* Fed.R.Crim.P. 32(d); *United States v.*

*Knorr,* 942 F.2d 1217, 1219 (7th Cir.1991). Coonce tries to meet his burden by claiming that he is relatively inexperienced with the criminal justice system and had a "quick change of heart" after entering his plea. We have noted that when an inexperienced defendant quickly changes his or her mind after entering a plea it indicates that the plea was entered in confusion and may have been unintelligently made. *United States ex rel. Miller v. McGinnis,* 774 F.2d 819, 824 (7th Cir.1985); *see also United States v. Barker,* 514 F.2d 208, 222 (D.C.Cir.1975). On the other hand, it has also been said that Fed.R.Crim.P. 11 provides a thorough hearing to determine the voluntariness and intelligence of guilty pleas, and that defendants afforded such a hearing should not be easily let off the hook when they feel like changing their minds.

> Given the great care with which guilty pleas are now taken—including placing the plea agreement on the record, making full inquiries into the voluntariness of the plea, advising the defendant in detail concerning his rights and the consequences of his plea, determining that the defendant understands these matters, and determining that the plea is accurate—there is no reason to view pleas so taken as merely "tentative," subject to withdrawal before sentence whenever the government cannot establish prejudice.

W. LaFave & J. Israel, *Criminal Procedure,* § 20.5(a), at 812 (1985); *see also United States v. Fountain,* 777 F.2d 351, 358 (7th Cir.1985) (no need for hearing on motion to withdraw guilty plea where inquiries at Rule 11 hearing satisfied court that plea was voluntary and defendant did nothing to cast doubt on that conclusion). We agree with the analysis that, absent some proof of changed circumstances or a question concerning the validity of the plea, a thorough Rule 11 hearing weighs against a defendant's attempt to withdraw a plea. *Cf. Knorr,* 942 F.2d at 1220 ("rational conduct requires that voluntary responses made by a defendant when entering a guilty plea be binding."); *McFar-*

*land,* 839 F.2d at 1242; *United States v. Ellison,* 835 F.2d 687, 693 (7th Cir.1987).

■ Coonce, however, contends that circumstances changed when the court denied his motion to strike the PSR. He argues that his inexperience led him to believe that evidence of uncharged conduct could not be used in his sentencing, as evidenced by his timely motion to withdraw his plea upon learning that such information could be used. We reject this claim. Coonce had a full Rule 11 hearing and the court questioned him thoroughly on his understanding of the plea agreement. Paragraph 3 of that agreement provides: "The defendant understands and agrees that the plea in this matter is a completely open plea and *at the time of sentencing the government will be free to present any relevant evidence in aggravation which it deems appropriate.*" Appellant's Appendix at 20 (emphasis added). Defendant signed this agreement and stated before the court during the Rule 11 hearing that he had read, understood, and approved of it. His claim that he understood "relevant evidence" to mean only such evidence as would be admissible under Federal Rule of Evidence 401 is unavailing. As we mentioned above, pre-guidelines sentencing procedures did not bar a court from hearing any relevant evidence, even if it would be inadmissible at trial. *E.g. Johnson,* 903 F.2d at 1089; *Marshall,* 719 F.2d at 891. Coonce, therefore, had no reason to doubt that evidence of uncharged conduct could be used against him at sentencing. Further, Coonce is not as inexperienced with the criminal justice system as he would like to have us believe. Prior to this case, he had pled guilty to criminal charges on two other separate occasions: once to reduce a driving under the influence charge to reckless driving, and another time to two counts of theft. Presentence Report, Appellant's Br., Addendum II, at 15–16. This belies the defendant's contention that he did not understand the consequences of entering a plea to a criminal charge. In our opinion, Coonce did not present the court with any legitimate reason to allow him to withdraw his plea, thus we find no merit in his argument.

Resourcefully, Coonce claims the plea was unintelligent on another ground—that he did not understand the nature of the charge against him. Rule 11 requires a court to insure that a defendant understands the nature of the charge before accepting a plea, Fed.R.Crim.P. 11(c)(1), and we are in agreement that a defendant who did not understand the charge pled to should be allowed to withdraw a plea. *See Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Oppel v. Meachum,* 851 F.2d 34 (2d Cir.), *cert. denied,* 488 U.S. 911, 109 S.Ct. 266, 102 L.Ed.2d 254 (1988). This case, however, has nothing to do with Coonce's understanding of the charge against him; it has to do with using evidence of *uncharged* conduct. That Coonce did not know that allegations of conspiracy and misrepresentation could be used against him does not lessen his understanding of the mail fraud charge, nor does he claim he did not understand that charge. Moreover, he had counsel at the time of the plea who had presumably explained the charges in the information and outlined the possible sentences, further undermining the claim. Finally, the plea agreement could have hardly been more clear in stating that the prosecution could present evidence in aggravation and Coonce could present evidence in mitigation. We seriously doubt that anyone with the defendant's business acumen and experience would find difficulty in understanding this. And if he did not understand that evidence in aggravation included evidence of uncharged conduct the fault lies with his attorney and himself, and certainly not with the court or the prosecutor. Because Coonce failed to give any valid, much less any legal, reason for the court to grant his requested withdrawal of his plea, we affirm the court's denial of his motion to do so.

## C. *Factual Finding as to Conspiracy*

After his motion to withdraw the guilty plea was denied, the defendant alleged that portions of the PSR were factually inaccurate. When a defendant makes such claims Federal Rule of Criminal Procedure 32(c)(3)(D) requires the court to ei-ther (1) make a finding as to the allegation, or (2) determine that no finding is necessary because the challenged fact will not be taken into account in sentencing. This rule serves a dual purpose. First, it protects a defendant's due process right to be sentenced only on the basis of accurate information. *United States v. Canino,* 949 F.2d 928, 950 (7th Cir.1991); *United States v. Montoya,* 891 F.2d 1273, 1279 (7th Cir. 1989). Second, by requiring the court to append a written copy of its findings and determinations to the PSR it provides a clear record of the resolution of disputed facts for appellate courts and agencies such as the Parole Commission, which may later rely on the PSR. *Montoya,* 891 F.2d at 1279; *United States v. Moran,* 845 F.2d 135, 138 (7th Cir.1988). In order to merit resentencing under Rule 32(c)(3)(D), a defendant must demonstrate that (1) the allegations of inaccuracy were before the district court, and (2) the court failed to make findings on the controverted matters or determine that they would not be used in sentencing. *Canino,* 949 F.2d at 950. Coonce argues that the court did not comply with Rule 32 when it neglected to make a factual finding as to his involvement in the agents' criminal enterprise.

In his pleading entitled "Allegations of Factual Inaccuracies Contained Under Pre–Sentence Report" the defendant denied that he had engaged in or organized a conspiracy or criminal enterprise with his agents. He disagreed with two portions of the PSR on this point: the prosecution's version of the offense, which described the alleged conspiracy to defraud the elderly, and the probation officer's evaluation, which said that Coonce had engaged in a criminal enterprise. Considering the defendant's claim that these descriptions were false, the court focused on the probation officer's use of the term "criminal enterprise." The court did not make a specific finding as to the accuracy of the term, but neither did it say that it would not consider the alleged criminal enterprise at sentencing. Rather, it wrote:

The other points that are raised about inaccuracies in the Pre–Sentence Report are directed in some part not to factual

assertions. For example, the defendant disagrees with the probation officer's assessment at page 21 of the report; that is, the probation officer's opinion and evaluation of what the defendant's conduct has been. The Court need make no finding about the factual accuracy of it since it is an opinion.

Sentencing Tr. at 172–73. The "assessment at page 21" was the probation officer's conclusion that Coonce had headed a criminal enterprise. Yet even though the court did not make an explicit finding that the defendant led a conspiracy or criminal enterprise, this does not necessarily mean, or even imply, that it failed to comply with Rule 32. Explicit findings are generally required, but there are no "magic words" a court must use; so long as it actually resolves the disputed issues on the record, a sentencing court fulfills the purposes of Rule 32. *Canino*, 949 F.2d at 951. In *Canino*, for example, the district court made an oral finding that it would accept the prosecutor's version of the PSR unless the defendant could corroborate his claims that the report was inaccurate. When the defendant could not do so the court made oral findings rejecting his claims. The appellate court reasoned that even though written findings are required, and thus the trial court had violated Rule 32, *the error was harmless because the oral findings on the record assured it that the purposes of Rule 32 had been satisfied. See also United States v. Slaughter*, 900 F.2d 1119, 1123 (7th Cir.1990). Likewise, in *Montoya*, the defendant charged that the court had improperly considered a disputed fact it had promised not to rely on at sentencing. The trial judge had, however, stated for the record that he agreed with the probation officer's opinion on the disputed issue (the defendant's remorse). We held that this was enough to satisfy Rule 32's requirement of a factual finding, noting that "the only disputed matter that the court referred to at the sentencing hearing was clearly resolved on the record." 891 F.2d at 1280.

The court in the instant case plainly relied on the allegations of conspiracy in sentencing Coonce, stating that "When one considers the enormity of the scheme and [the loss it caused] and that *Mr. Coonce was the facilitator, without him, the scheme wouldn't have existed. He was the center of it.*" Sentencing Tr. at 176 (emphasis added). Though this use of the conspiracy allegation would be error if the court had not made a finding that the conspiracy existed, the record is clear that a conspiracy existed and furthermore that the court made such a finding. Having noted that it was considering the defendant's role as a conspirator or co-conspirator, the court went on to explain why it felt comfortable doing so. "If you look at [Coonce's agent] Robison's grand jury testimony, which I only glanced at, you find repeated over and over again that it all went back through Randy Coonce, it all went back through Mr. Coonce. *He was the conduit, if you will, for the scheme.*" Sentencing Tr. at 176; Order on Final Disposition, Appellant's Appendix, at 96 (emphasis added). Robison and other agents who worked for Coonce had all pled guilty to mail fraud in connection with the conspiracy to defraud senior citizens. The quoted statement clearly establishes that the court believed that Coonce was an active participant in the alleged conspiracy.

This is analogous to *Montoya*, where the court not only resolved the issue on the record, but included its findings in the order appended to the PSR. Given such evidence, we hold that the district court made the required factual findings and fully complied with the purpose of Rule 32. The record is clear that the trial court was not misled and relied only upon accurate information when imposing sentence upon the defendant.[4]

### D. Burden of Proof Under Rule 32(c)(3)(D)

■ Coonce next alleges that the district court erred when imposing upon him

---

**4.** We note also that the statement we rely on as proof of the court's factual finding was included in the "Order on Final Disposition" attached to the PSR. Thus the second purpose of Rule 32, providing an accurate record for appellate courts and administrative agencies, has been satisfied.

the burden of proof regarding the factual inaccuracy of the PSR. He bases his argument on the thin reed of *United States v. Lueddeke,* 908 F.2d 230 (7th Cir.1990). *Lueddeke* simply noted the general standard for determining how reliable information must be before a court can consider it in sentencing.

We begin our analysis of these points by noting that "so long as the information which the sentencing judge considers has *sufficient indicia of reliability* to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Miller,* 891 F.2d 1265, 1270 (7th Cir. 1989), *quoting United States v. Marshall,* 519 F.Supp. 751, 754 (D.Wis.1981), *aff'd,* 719 F.2d 887 (7th Cir.1983).

*Id.* at 234 (emphasis added). The case does not say anything about whether the prosecutor or the defendant has the burden of either production or proof. Nevertheless, Coonce maintains that the only logical interpretation of the quoted language is that the prosecutor has the burden of proof. As the party offering the information, he argues, the prosecutor must show it bears "sufficient indicia of reliability." The government responds to this argument by citing *United States v. Gaddy,* 909 F.2d 196 (7th Cir.1990), which held that a defendant must make *some* objection to a PSR before a court is required to make findings as to contested facts. *Accord United States v. Briscoe,* 896 F.2d 1476, 1521 (7th Cir.1990); *United States v. Scalzo,* 716 F.2d 463, 469 (7th Cir.1983); *United States v. Harris,* 558 F.2d 366, 377–78 (7th Cir. 1977). But Coonce made the proper objections, at least as to the allegations of conspiracy and misrepresentation. Thus the question is whether he should have had the initial burden of producing some evidence apart from his mere allegations that the allegations of conspiracy and misrepresentation were false.

Though our cases have not explicitly held so, they have implied that a defendant challenging a PSR has the burden of producing evidence bringing the accuracy of the report into question. In *Canino* we upheld a court's decision to accept the prosecutor's version of the PSR unless the defendant could produce evidence other than his own testimony in support of his claims. 949 F.2d at 951. *United States v. Moran,* 845 F.2d 135, 139 (7th Cir.1988), also involved a sentencing judge who told the defendant he would accept the prosecution's version in the PSR as true unless the defendant presented evidence to demonstrate that controverted statements were either inaccurate or not credible. The defendant there had a chance to present evidence but failed to establish any factual errors, and so the court properly took account of the entire PSR in sentencing. *Id.* These cases indicate that, in practice, courts have long placed the burden on the defendant challenging a PSR to come forward with evidence indicating that parts of the report are false, and we have not been presented with any logical or legal reason for change, thus we refuse to adopt such a rule. Others have agreed with this method.

It is generally accepted that ... the defendant must be afforded an opportunity to *rebut or explain the "facts" which are in the presentence report or are otherwise brought to the attention of the judge....* As to just what is required of the defendant in this connection, the general rule is that when matters are contained in a report, *the defendant has an affirmative duty to present evidence showing the inaccuracies contained in the report.*

W. LaFave & J. Israel, § 25.1(d), at 929 (1985) (emphasis added). It may be that in the case of a naked or unsupported charge a defendant need only deny the allegation. *Id.* at 930; *see also United States ex rel. Welch v. Lane,* 738 F.2d 863, 865 n. 3 (7th Cir.1984) ("If the contested information is obviously unreliable, the appellate court may simply require that the defendant be resentenced without reliance on the challenged information."); *United States v. Weston,* 448 F.2d 626 (9th Cir.1971). But this is not such a case. The statements in Coonce's PSR regarding conspiracy and misrepresentation were supported by the testimony of his convicted agents, interviews with victims, and the testimony of

the postal inspector. His burden was more than a simple denial, he needed to do what the district court asked: "come forward and at least make some showing other than a naked allegation that the Pre–Sentence Report is inaccurate." Sentencing Tr. at 12.

Coonce's burden argument is partially correct, however, in that he should not bear the final burden of persuasion. That rests with the prosecution (assuming the defendant first meets the burden of production). As LaFave & Israel, *supra,* states, "[T]he burden of production is properly placed upon the defendant. But when it has been met by a showing of evidence that the ·challenged 'fact' is untrue, then a balancing of the relevant interests requires that the burden of persuasion regarding that fact be placed on the prosecution." W. LaFave & J. Israel, § 25.1(d), at 930. We believe that this shifting of the burden is the proper way to accommodate the due process concern that only reliable evidence be used when sentencing a defendant. *See United States v. Lee,* 818 F.2d 1052, 1056–57 (2d Cir.1987). Of course, once it has initially presented evidence with sufficient indicia of reliability, the government need not go further to meet its burden of persuasion until the defendant has made some showing calling the alleged facts into question.

In sum, the following procedure may be used to insure the accuracy of the facts used at sentencing. First, the defendant must challenge the facts in the PSR (or other facts the court might consider) as being unreliable or incorrect. Having done so, and assuming the facts as presented bear sufficient indicia of reliability, the defendant must carry the burden of presenting some evidence beyond a mere denial calling the reliability or correctness of the alleged facts into question.[5] If the defendant meets this burden of production, the burden of persuasion then shifts back to the prosecution, who in turn must convince the court that the facts presented by the government are actually true. In the case

at bar, the court properly placed the initial burden to challenge the accuracy of the PSR on Coonce, giving him every opportunity to make and support his claims. We next address whether he met that burden.

### E. *Reliability of the Evidence*

Coonce claims that, regardless of who bore the burden of proving the reliability of challenged facts, the charges of criminal enterprise and misrepresentation of product lacked "sufficient indicia of reliability" in the first place. Alternatively, he alleges that he met his burden of undermining confidence in the alleged facts. Specifically, he complains that the court refused to allow him to examine the probation officer who prepared the PSR. Coonce believed that two of the statements relied on by the officer came from victims of his agents' scheme, and were not even his customers. The court refused Coonce's request, finding that the report adequately explained the officer's conclusions, and on that basis the court could decide if the conclusions were correct. The court heard testimony from Coonce, who denied misrepresenting products or engaging in a conspiracy to do so, and a postal inspector, who described Coonce's involvement with his agents in misrepresenting products. It also considered the statements of the co-conspirators and victims of the scheme, along with the detailed allegations in the PSR. Based on the totality of the record, the court properly found Coonce was not credible and that he had actively engaged in a scheme to misrepresent products and targeted that scheme at senior citizens. Sentencing Tr. at 173–74.

 Though Coonce claims that the evidence did not indicate the PSR's allegations of conspiracy and misrepresentation were true, we review a sentencing court's factual determinations deferentially, reversing them only if they were clearly erroneous. *See United States v. Jewel,* 947 F.2d 224, 233 (7th Cir.1991); 18 U.S.C. § 3742(e)

---

**5.** We note that when facts are plainly unreliable or incorrect a court may ignore them without a

prompting objection from the defendant.

(both referring to factual determinations made in Sentencing Guidelines cases). We are satisfied with the district court's analysis and find no error here. "Sufficient indicia of reliability" might also be described as "an 'evidentiary basis beyond mere allegation in the indictment.'" *United States v. Castellanos*, 904 F.2d 1490, 1495 (11th Cir.1990), quoting *United States v. Smith*, 887 F.2d 104, 108 (6th Cir.1989). The evidentiary basis certainly amounted to more than a "mere allegation." The court relied on the postal inspector's testimony, the fact that Coonce obtained his list of "leads" from NARP, the statements of victims of the scheme, and the fact that most of his sales were to older people. Further, the court took judicial notice of statements implicating Coonce made during the Rule 11 plea proceedings of his agents. Thus the evidence in the record provided "sufficient indicia of reliability" for the court. Moreover, Coonce was unable to meet his burden of establishing otherwise, because the only evidence he presented was his own testimony, which the court determined to be unworthy of belief. And even if he had been allowed to call the probation officer and show that the two "victims" whose statements were included in the PSR were not his clients, the outcome would be the same. Significant evidence of guilt remained (i.e. testimony of his agents, the postal inspector, his use of the NARP list, and statements of the victims), and the fact that the victims were not his clients does not necessarily mean he played no role in the overall scheme to defraud them.

One of Coonce's other allegations must be addressed in more detail. As noted above, the court took judicial notice of statements made by Coonce's agents at their respective guilty plea hearings. He argues that he was deprived of due process when the court used the statements against him without giving him an opportunity to challenge their accuracy. As far as it goes this argument is correct; defendants do enjoy a due process right to challenge evidence from other trials when it is used against them.

[E]vidence presented at another trial may not—*without more*—be used to fashion a defendant's sentence *if the defendant objects*. In such a case, where the defendant has not had the opportunity to rebut the evidence or generally cast doubt upon its reliability, he must be afforded that opportunity.

*Castellanos*, 904 F.2d at 1496 (first emphasis in original, second emphasis added). We agree with this statement, but we disagree with Coonce's argument. To begin with, the defendant's failure to object to the use of the agents' statements was fatal, and he has thus waived his claim on this point. Alternatively, even if we did not find waiver, the defendant had an opportunity to combat these statements. He testified at the hearing and had the chance to challenge and cast doubt on the agents' statements but failed to do so. Since the agents were under oath at the time of their former statements, made at Rule 11 guilty plea hearings, these statements were reliable, and as no one has suggested that the agents received more lenient sentences in return for implicating Coonce, we see no inherent reason for discrediting their testimony as being self-interested. Cross-examination of these agents may have been useful, but Coonce plunges us into the valley of speculation when he argues that the lack of cross-examination was so likely to lead to sentencing on false information as to deny due process. Further, the use of these statements should not have caught Coonce off guard. Earlier in the hearing he asked the court to take judicial notice of the sentences received by the agents in comparing them to his. Use of the statements, then, might have been expected, meaning the failure to object cannot be explained by surprise.

## F. Length of Sentence

Finally, the defendant makes several allegations of error regarding the length of his sentence. He claims (1) that the sentence was disproportionate in comparison to his agents', (2) that the court erred in imposing consecutive sentences on counts arising from a single scheme, and (3) that

the sentence was excessive and reflected the court's preconceived bias.

### 1. Proportionality

The first claim is that the sentence was disproportionate when compared to those received by the agents. Coonce received three consecutive five-year terms followed by five years of probation. His agents received varying punishments for their role in the conspiracy: Robison received five years' jail time, five years' probation, and was ordered to pay $6,000 restitution; Chandler received thirty-three months' imprisonment, three years' supervised release, and had to pay $2,100 restitution; Perry received ten months in jail, five years' probation, and 1,000 hours of community service; Roach received five years' probation and had to pay $534 restitution.

▮ *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) defined the factors considered in a proportionality analysis. These are the gravity of the offense and the harshness of the penalty, sentences imposed on others in the same jurisdiction (i.e. whether more serious crimes are subjected to the same or less serious penalties), and sentences given for the same crime in other jurisdictions. *Id.* at 291–92, 103 S.Ct. at 3010–11. There can be no doubt that mail fraud is a serious offense and that the defendant's sentence was not unduly harsh. He pled guilty to four counts of fraud under 18 U.S.C. § 1341, each of which could carry a prison term of up to five years. He received the full term on three counts and probation on the fourth. Such a sentence is certainly within the court's discretion.

▮ The thrust of the defendant's argument, however, is directed at the sentences received by his agents, which were all significantly shorter than his. Comparison of sentences is a matter of discretionary line-drawing, carried out on a case-by-case basis. *Id.* at 294–95, 103 S.Ct. at 3011–12. In this case none of the agents pled guilty to more than two counts of mail

fraud; Coonce pled guilty to four. On the other hand, Coonce argues that agents Chandler, Robison, and Roach, all had significant criminal histories when compared to the defendant.[6] Yet, as the PSR points out, Coonce himself had two theft convictions. He had also had his license revoked by the Illinois Department of Insurance in 1985 for fraudulent misrepresentation of insurance policies, though he later reached an accord with the Department and was reinstated. Equally if not more telling is the fact that the court heard from three victims of a new fraudulent scheme that Coonce cooked up after he was forced out of the insurance business. Further, the criminal records of the agents actually lend support to the court's finding that Coonce was the head of the scheme; he must have known when he hired them that these were not clergymen interested in taking the straight and narrow path to business success. More important, though, is the fact that Coonce organized and directed the entire scheme and used his agents to carry it out. They played lesser roles while he was the central figure. Sentencing Tr. at 176 ("Mr. Coonce was the facilitator ... He was the center of it ... it all went back through Mr. Coonce."). In light of this difference in culpability, the district court could reasonably have concluded that Coonce merited a much stricter penalty. Further, mere disparity of sentences between co-defendants and co-conspirators cannot alone prove an abuse of discretion. *Madison,* 689 F.2d at 1315. We therefore hold that his sentence was not disproportionate and his Eighth Amendment rights were not violated.

### 2. Consecutive Sentences

▮ Coonce further argues for a "bargain basement" procedure in the criminal justice system, contending that concurrent, not consecutive, sentences are the proper penalty when a defendant is convicted on multiple counts of mail fraud arising from a single scheme or course of conduct. *See*

---

**6.** Robison had "a significant criminal history involving schemes to defraud." Appellant's Br. at 29. Chandler's criminal history included a bank robbery and a "jailbreak." *Id.* at 31. Roach also had a "significant criminal history." Appellee's Br. at 29.

*United States v. Moss,* 631 F.2d 105 (8th Cir.1980) and *United States v. Mackay,* 491 F.2d 616 (10th Cir.1973). *Moss,* however, does not hold that imposition of consecutive sentences on multiple counts of mail fraud arising from a single scheme is an abuse of discretion. Quite the contrary:

> Although this court has recommended use of concurrent terms of imprisonment for mail fraud convictions when a multiple count indictment involves a single scheme or course of conduct, we nonetheless have refused to hold that imposition of consecutive sentences, even when each of the separate offenses arose from a single concerted plan to defraud, constituted an abuse of discretion.... "It is well settled that each use of the mails is a separate offense under the mail fraud statute, notwithstanding the fact that the defendant may have been engaged in one fraudulent scheme."

631 F.2d at 106–07, quoting *United States v. Moss,* 614 F.2d 171, 174 (8th Cir.1980). Likewise, *Mackay* did not state a rule, but simply remanded for resentencing where consecutive sentences struck the court as unconscionable in light of the defendant's criminal history and degree of involvement. 491 F.2d at 624–25. Simply put, there is no support for the defendant's argument. *See United States v. Bramlet,* 820 F.2d 851, 857 (7th Cir.1987) ("The Appellant has cited no authority, and we are aware of none, to support his claim [that imposition of consecutive sentences on multiple mail fraud counts is an abuse of discretion"].). Moreover, in pre-guidelines cases, such as this one, a district court's sentence is unreviewable so long as it is within statutory limits and is not predicated on misinformation or impermissible considerations. *Id.* at 857, citing *Gore v. United States,* 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958) and *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972). Coonce's sentence was not based on misinformation or impermissible considerations, and we therefore reject his claim.

### 3. Bias

Coonce's last claim has two wrinkles. First, that his sentence should be reduced because it is excessive, and excessive sentences disserve society. This claim fails because we have already rejected its premise; by finding the sentence was not disproportionate under *Solem* we also found that it was not excessive. Accordingly, it could not injure society. Second, the defendant alleges that Judge Baker had a preconceived bias towards him, which he unleashed in imposing sentence. This claim rests on the court's discussion of insurance policies. Judge Baker stated that "Anybody who knows anything about investments knows that [life insurance] is a bad investment." Sentencing Tr. at 25. Coonce also perceives bias in the court's refusing to allow him to examine the probation officer who prepared the PSR.

As to the court's bias against life insurance, Judge Baker made a concerted, and convincing, effort to remove any perception of bias. Before examination of witnesses began, the following colloquy took place between Coonce's attorney and the court:

> MR. RYAN: I have a feeling, though, from your Honor's statements that your Honor feels that insurance is a bad investment.
>
> THE COURT: No. It provides [an] immediate estate, it provides an estate liquidity for estate planning purposes; but if you're looking to make money, don't buy insurance. That's my plain flat statement.

Sentencing Tr. at 26. Later, before passing on the disputed facts, the judge made another effort to clarify his position.

> THE COURT: Something else I should make clear. I thought I did before. I don't think insurance, life insurance, is bad. Life insurance serves a very real purpose for many people. If you're buying life insurance for an investment to make money, you better go talk to an investment counselor. That's my point about that.

*Id.* at 170. The test for whether a trial court is biased is objective. *See Union Carbide Corp. v. United States Cutting Service, Inc.,* 782 F.2d 710, 715 (7th Cir. 1986) (under 28 U.S.C. § 455, judge should recuse self where a fully informed, objec-

tive observer would seriously doubt justice could be done in the case). Judge Baker's statements make it clear that he had no beef with life insurance per se, just when it was passed off as an investment vehicle. He directly stated that he did not think life insurance was bad and that he realized that it helps many people. In sum, we do not agree that the record indicates any bias on the judge's part; thus we are of the opinion that the sentence imposed was not affected.[7]

As to the other claim of bias rooted in the court's refusal to put the probation officer on the stand, we fail to see how this shows prejudice against the defendant. Probation officers are appointed by and serve the court, 18 U.S.C. § 3602, and it is entitled to rely on the reasoning and conclusions in their reports, subject to defendants' challenges under Rule 32. Coonce wanted to cross-examine the probation officer as to his (Coonce's) relationship with the two victims the officer interviewed. The probation officer, however, told the court that he had not relied on the victims' statements in reaching his conclusion. Sentencing Tr. at 117. Thus any cross-examination on this point would have been meaningless, and Coonce was not injured by what he refers to as bias. *Cf. United States v. Barry,* 938 F.2d 1327, 1342 (D.C.Cir.1991) (allegation of bias was unfounded where judge gave defendant a full opportunity to challenge the PSR, even though judge did not let him examine the probation officer).

## CONCLUSION

For the reasons stated, the sentence imposed by the district court is

AFFIRMED.

---

7. We also note that if Coonce was seriously concerned about the court's bias he should have sought to have Judge Baker removed under 28 U.S.C. § 144 by filing an affidavit stating the reasons for his fears. That he did not lends support to our holding and suggests that dissatisfaction with the judge came "after the fact."