**UNITED STATES of America, Plaintiff–Appellee,**

v.

**L. Kevin WESTBROOK, Defendant–Appellant.**

No. 91–3101.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 2, 1993.

Decided Feb. 12, 1993.

David E. Risley, Rodger A. Heaton, Asst. U.S. Atty. (argued), Office of U.S. Atty., Springfield, IL, for plaintiff-appellee.

James D. Lynch (argued), Springfield, IL, for defendant-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

L. Kevin Westbrook pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). The plea agreement reflected the parties' disagreement on the amount of cocaine involved in the conspiracy, the government contending that the amount was about 567 grams and Westbrook maintaining that less than 500 grams was involved. The probation office conducted a presentence investigation and concluded that 9⅜ ounces (about 266 grams) was the correct amount. This figure, with which the government agreed by that time, was included in the presentence investigation report (PSR) at paragraph 37.

At the sentencing hearing on August 27, 1991, Westbrook's attorney, Peter Woody, disputed the amount contained in paragraph 37. Woody argued that the figure of 9⅜ ounces was unreliable because it was based in part on information supplied by one of Westbrook's co-conspirators, David Karr. Woody contended that Karr's information was unreliable because Karr had given to agents varying estimates of the amount of cocaine that he had sold to Westbrook, ranging from 20 ounces to 8–10 ounces. Sentencing Tr. 10–11. Woody also represented to the district court that if Westbrook were to testify, he would testify that only 2½ ounces (about 71 grams) were involved. *Id.* at 7, 16. The judge accepted Woody's representations, but he noted that if Westbrook took the stand, he would open himself up to cross-examination and it might become necessary to call Karr, who might give damaging testimony. *Id.* at 20. Woody did not indicate whether he would put Westbrook on the stand; instead, he returned to attacking Karr's credibility. *Id.* at 20–22. The judge then made the following ruling:

> I am going to overrule your objection, Mr. Woody. And I am going to adopt Paragraph 37 of the presentence report. And it seems to me that there is adequate credibility information here.

*Id.* at 24. The judge assessed Karr's credibility based on the judge's observation of Karr's testimony in a related trial, explaining that

> I have heard Karr on the stand. And he—
>
> Talk about credible and impressive testimony. I have rarely seen a co-conspirator who has got on this stand and presented such impressive testimony. And, clearly, that jury was especially impressed with him. And in contrast to Strauser, who was a lousy witness, Karr was very impressive.
>
> So I believe there is adequate foundation for the conclusion that [the Probation Officer] has presented to us in Para-

graph 37. And I am going to adopt Paragraph 37 over your objection. *Id.* at 23–24. The Assistant U.S. Attorney asked if Westbrook was going to take the stand. After consulting with Westbrook, Woody declined to put him on the stand. *Id.* at 25. The judge sentenced Westbrook to 27 months' imprisonment, which was at the bottom of the guideline range.

## ANALYSIS

Westbrook argues on appeal that the district court prejudged matters in dispute because it accepted the figure contained in the PSR without hearing testimony on the issue. More specifically, Westbrook objects to the district court's "unalterable reliance" upon the out-of-court declarations of David Karr in determining the quantity of drugs attributable to him (Br. 7).

■■■ A defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991). Nevertheless, a district court may consider hearsay evidence when sentencing a defendant. *Id.* Generally, "[t]o succeed on a challenge to a sentence, a defendant must show that the information before the court was inaccurate, and that the court relied on it." *Id.*

In this case, Westbrook does not directly argue that the sentencing court relied on inaccurate information; instead, he claims that he was denied due process because the court prejudged matters in dispute. Westbrook attempts to analogize his case to *United States v. Pugliese*, 805 F.2d 1117 (2d Cir.1986). In *Pugliese*, the presentence reports alleged that the defendants had been involved in an attempt to kill a government witness who was going to testify against them. When defense counsel questioned the propriety of the sentencing judge relying on this information, the judge stated that "the history of what has happened in this case would almost dictate to this Court that these defendants were involved in that shooting and I'm standing on that statement, I'm not going to change it." *Id.* at 1119. Nevertheless, the judge looked at evidence adduced at a related proceeding before another judge. At a second sentencing hearing, the judge stated that the evidence from the other proceeding supported his earlier conclusion. On appeal, the defendants successfully argued that it was a violation of due process for the sentencing judge to pronounce that he held "unalterable" views on matters in the presentence report prior to a hearing. *Id.* at 1124.

■■ *Pugliese* is distinguishable from Westbrook's case. Here the sentencing judge did not state that his mind was made up on Karr's credibility. In its brief, the government quotes a telling passage from the sentencing transcript in which the judge stated that it was his *inclination* to accept the estimates contained in paragraph 37 of the PSR. He also indicated that Westbrook could proceed to take the stand to tell his side, but that Karr might be called to testify (Br. 13 (quoting Sent. Tr. 19–20)). At this point, he stated that he had seen Karr testify in a related case and that Karr had been a very impressive witness, but he in no way indicated that his mind was closed on this issue. He was simply informing Westbrook why he felt Karr was credible, not that he had made up his mind.

Leaving aside the issue of whether the court prejudged matters, we now consider Westbrook's claim that the court relied on inaccurate information in sentencing him.[1] The government claims that Westbrook failed to meet his burden of producing evidence that Karr's estimates were unreliable (Br. 6). Westbrook counters that he had no obligation to present evidence disputing the $9\frac{3}{8}$–ounce figure (Reply Br. 5). He maintains that it was the responsibility of the government to establish that figure by presenting Karr's testimony in open

---

**1.** Westbrook does not make this claim explicitly in his opening brief, though perhaps it is implicit in his argument concerning the sentencing court prejudging matters. In any case, the government addressed the issue of who bore the burden of proof on the quantity issue, and Westbrook responded in his reply brief. Therefore, we analyze the parties' arguments on this issue.

court and subjecting him to cross-examination (Br. 7).

 Westbrook's position conflicts with *United States v. Coonce*, 961 F.2d 1268 (7th Cir.1992). In that case, the Court specifically addressed the issue of whether the defendant or the government had the burden of proof when the defendant challenges allegations in the PSR. The Court held that when a defendant contests an allegation in the PSR, he bears the burden of production; that is, he must come forward with evidence showing that the challenged fact is untrue. *Id.* at 1279–80. Once the defendant meets this burden, the prosecution bears the final burden of persuasion. *Id.* at 1280. The only time when the defendant can possibly succeed with a mere denial is "in the case of a naked or unsupported charge." *Id.* at 1279.

Applying the *Coonce* framework to this case, Westbrook loses. First, this case does not involve a "naked or unsupported charge." Westbrook himself admits that he conspired to distribute 2½ ounces of cocaine. Sent. Tr. 7. The PSR figure of 9⅜ ounces is therefore not without any foundation. Second, because this case does not involve a "naked or unsupported charge," Westbrook was obligated to produce some evidence showing that the figure of 9⅜ ounces is incorrect. Although he had such an opportunity at the sentencing hearing, he declined to do so. He cites Woody's representation as to what Westbrook would have testified to if he had taken the stand, but even if this were treated as actual testimony, the district court did not abuse its discretion in crediting the hearsay statements of Karr rather than the self-serving testimony of Westbrook. *United States v. Beal*, 960 F.2d 629, 634–635 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992).

Finally, Westbrook notes that the district court failed to attach written findings to the PSR as required by Fed. R.Crim.P. 32(c)(3)(D) (Reply Br. 1–2). This argument fails for a number of reasons: (1) Westbrook raised it for the first time in his reply brief, *United States v. Hughes*, 970 F.2d 227, 235 n. 6 (7th Cir.1992), (2) when he raised it, he did so in a perfunctory manner, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), and (3) the district court's failure to attach written findings was harmless error because the court made clear on the record the basis for its decision. Sent. Tr. 22–24; *United States v. Canino*, 949 F.2d 928, 951 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992).

### CONCLUSION

The sentence imposed by the district court is AFFIRMED.