### UNITED STATES of America, Respondent,

v.

### Jesus AVILA–MEDINA, Petitioner.

### No. 94 C 183, 93 CR 079.

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1994.

tion is denied as moot in light of this court's reconsideration of Judge Bua's December 16, 1987 ruling.

Scott Jay Frankel, Frankel & Cohen, Chicago, IL, for petitioner.

John J. Tharp, U.S. Atty.'s Office, Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the petitioner's motion under 28 U.S.C. § 2255 to reduce a sentence handed down by this court in *United States v. Jesus Avila–Medina*, 93 CR 79–1. In that case, petitioner pleaded guilty to one count of conspiracy to produce false identification cards in violation of 18 U.S.C. § 371. This court sentenced him to prison for one year and one day. Subsequently, respondent notified petitioner that evidence relied on by this court in applying a six-point sentencing enhancement was possibly unreliable. For the reasons set forth below, the court finds that the six-point guideline enhancement was based on unreliable information and petitioner's motion is granted.

## I. BACKGROUND

Except when indicated otherwise, the following facts are from the *Government's Version of the Case*, attached to the Pre–Sentence Investigation Report ("PSI") dated July 27, 1993. On June 5, 1992, Jesus Avila–Medina ("Avila") offered to sell counterfeit alien registration and social security cards to an Immigration and Naturalization Service ("INS") informant. The informant paid Avila for the documents and told Avila that his "cousin," INS agent Gus Meza ("Meza"), would pick them up the next day. On June 6, Meza picked up the documents from Avila. Meza bought additional documents from Avila on June 20, 1992 and August 1, 1992.

On January 30, 1993, Meza and INS agent Gilbert Solis ("Solis") met with Avila at his residence to buy another counterfeit registration card and social security card. Avila asked Meza to drive him to the residence of Manuel Marquez to place an order with a new source for documents. During the car trip, Meza and Solis allege that Avila stated that the new source received high quality counterfeit documents in large shipments from California. *Government's Version of the Case*, at 3. The new source was Jose Marquez ("J. Marquez"). In Avila's *Statement of Offense* (attached to the PSI), he admitted knowing J. Marquez "for awhile" and that J. Marquez "fixed" papers. *Id.* at 1. He admitted that J. Marquez told him to "take them [the customers] to me" and Avila admitted that he did this for J. Marquez "only now and then." *Id.* Later, on January 30, Avila sold a counterfeit alien registration card and a counterfeit social security card to Meza for $160.

On February 1, 1993, on Meza's behalf, Avila telephoned Manuel Marquez (J. Mar-

quez' cousin) to place an order with J. Marquez for another registration and social security card. Later that day, J. Marquez delivered the documents to Avila's residence. Avila sold these documents to Meza for $150. INS agents subsequently arrested Avila and J. Marquez. During the search of J. Marquez' apartment, INS agents found 279 counterfeit alien registration cards and 55 counterfeit social security cards.

## II. *PROCEDURAL HISTORY*

Avila pleaded guilty to one count of Conspiracy to Produce False Identification Cards in violation of 18 U.S.C. § 371. In the plea agreement, Avila stipulated for purposes of computing his sentencing base offense level that he sold counterfeit documents on the above dates.

This court sentenced Avila to a prison term of twelve months and one day. The court applied a six-point base offense level enhancement from the United States Guidelines Commission, *Guidelines Manual,* § 2L2.1(b)(2)(C) (Nov.1992) ("Guidelines"). This court concluded that it was reasonably foreseeable to Avila that J. Marquez possessed all the counterfeit documents found in his bedroom. The court relied on three facts for this finding: that Avila admitted going to J. Marquez for papers more than once; that Avila admitted that J. Marquez instructed him to "Take them [customers] to me;" and the statement in the PSI that Avila told agents Meza and Solis his new source of supply received counterfeit documents in large shipments from California. Avila denied making this statement. During the preparation for the trial of co-defendant M. Marquez, the assistant U.S. Attorney trying the case determined that, with respect to statements relating to the receipt of documents from California, "Agent Meza could not recall whether the defendant made the statements" and that "Agent Solis recalled that the defendant had made the statements, but could not recall whether the defendant had made the statements before or after January 30, 1993." *Government's Response to Defendant's Motion,* at 2–3. After being notified of this, Avila filed the present motion under 28 U.S.C. § 2255 to reconsider the six-point base level enhancement in his sentence.

## III. *DISCUSSION*

The main issue in this case is what weight the district court should give to a statement relied upon for sentencing enhancement when the reliability of that statement is subsequently put in doubt by the government.

■ A defendant has a due process right to be sentenced on the basis of accurate information. *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972); *United States v. Coonce,* 961 F.2d 1268, 1275 (7th Cir.1992). When a defendant challenges an allegation in the PSI, he has the burden of producing some evidence beyond his own testimony that calls into question the reliability or correctness of the facts. *United States v. Isirov,* 986 F.2d 183, 186 (7th Cir.1993); *Coonce,* 961 F.2d at 1280. This evidence must bear sufficient indicia of reliability. *Coonce,* 961 F.2d at 1280; *Guidelines* § 6A1.3(a). If the defendant meets his burden, "the burden of persuasion then shifts back to the prosecution, who in turn must convince the court that the facts presented by the government are actually true." *Coonce,* 961 F.2d at 1280.

■ In his motion, Avila alleges that the government's reasons for doubting Meza's statement shows that the statement is unreliable. This allegation satisfies Avila's burden because the prosecutor, not Avila, called into doubt the reliability of Meza's statement.

The government, thus, has the burden to convince the court that the facts presented by the government are actually true. *Coonce,* 961 F.2d at 1280. The government must prove the veracity of the statement by a preponderance of the evidence since the severity of Avila's sentence is linked to the existence or nonexistence of exculpatory or mitigating facts. *McMillan v. Pennsylvania,* 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986); *United States v. Schuster,* 948 F.2d 313, 315 (7th Cir.1991). Since the government prosecutor doubted the reliability of Meza's and Solis' statement for trial, the government must now prove the truth of this statement by the preponderance of the evidence.

In its response to this motion, the government argued that the statement is reliable because Special Agent Tyler Shoudy, to whom agents Meza and Solis reported the statement, recorded the statement in an official report written near the time of the event. *Government's Response to Petitioner's Motion*, at 4. Furthermore, the government argues that since at least one of the agents, Solis, remembered Avila making the statement, the statement is reliable, *id.* at 5, although he could not remember when Avila made the statement. While this evidence tends to corroborate the truth of the alleged statement, this court finds that the government did not prove the statement's truth by a preponderance of the evidence.

■ The government failed to prove its burden for the following reasons: (1) out of the two agents present when Avila made the statement, only one could remember Avila saying it; (2) the agent who heard the statement could not remember on which day it was said; (3) the seasonable recordation of the statement by a third agent not present when the statement was made is double hearsay; and (4) the defendant consistently denied making the statement. Thus, on the record presented to this court, the statement that Avila told INS agents that his co-conspirator received large amounts of counterfeit documents from California does not possess sufficient indicia of reliability upon which to rely to increase petitioner's sentence.

■ Because the principal evidence on which the court relied to apply a six-level sentencing enhancement has been held unreliable, the defendant's sentence must be modified. For sentencing purposes, a defendant who pleads guilty to conspiracy is accountable for all transactions that he was aware of or that he should have reasonably foreseen. *United States v. Guerrero*, 894 F.2d 261, 266 (7th Cir.1990). This accountability is limited to the number of transactions that are reasonably foreseeable to each defendant. *United States v. Wagner*, 996 F.2d 906, 913–14 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 720, 126 L.Ed.2d 685 (1994). The most relevant factor in determining the reasonable foreseeability of the conduct engaged in by a co-conspirator is the scope of defendant's agreement with him. *United States v. Edwards*, 945 F.2d 1387, 1392 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Avila and J. Marquez did have an agreement. By Avila's own statement, the agreement lasted "a few months" and he used J. Marquez "every now and then." Therefore, any reasonable person would believe that J. Marquez had the ability to produce multiple counterfeit documents. However, absent a specific showing by the government that Avila could reasonably foresee that J. Marquez would have over 300 documents in his bedroom, the court cannot hold Avila accountable for the entire amount. In fact, this court, at sentencing, recognized the opposite: "No evidence was forwarded to show that defendant knew of the exact quantity of documents possessed by Jose Marquez." *United States v. Avila–Medina*, No 93 CR 79–1, (N.D.Ill.1993) (*Statement of Reasons for Imposing Sentence Under the Sentencing Guidelines*, at 3–4). Now, without any evidence that Avila knew about "large quantities" of documents possessed by his supplier, it cannot be said that defendant could have "reasonably foreseen" over 300 counterfeit documents in J. Marquez' possession.

Since the government did not prove by the preponderance of the evidence the *number* of documents reasonably foreseeable to Avila, this court does not hold Avila responsible for the 334 counterfeit documents found in J. Marquez' bedroom.

### IV. CONCLUSION

For the reasons set forth above, petitioner's 28 U.S.C. § 2255 motion to correct his sentence is granted. Petitioner Avila–Medina's sentence imposed by this court on August 24, 1993 is hereby vacated. As such, defendant Avila–Medina must be resentenced. The renewed sentencing hearing for petitioner Jesus Avila–Medina will be held on March 1, 1994 at 2:00 p.m.